In the Matter of WALTER & SAMUELS, INC., as Agent, Appellant, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent.

First Department, June 9, 1981

### APPEARANCES OF COUNSEL

*Carl F. Schwartz* of counsel *(Sidamon-Eristoff, Morrison, Warren, Ecker & Schwartz,* attorneys), for appellant.

*William E. Rosen* of counsel *(Ellis S. Franke,* attorney), for respondent.

### OPINION OF THE COURT

KUPFERMAN, J. P.

In this CPLR article 78 proceeding, we are concerned with an apartment at 1155 Park Avenue in Manhattan, the tenant of which is the "Permanent Mission of Syria to the United Nations".

The apartment in question was first rented in 1968 to the then Ambassador and Permanent Representative of the Syrian Arab Republic to the United Nations, Dr. George J. Tomeh. At the time of the renewal of the lease in 1974, the then Ambassador and Permanent Representative to the

United Nations, Dr. Haissam Kellani, requested that the lease be placed in the name of the Permanent Mission of Syria to the United Nations, and when renewed in 1977 by the then Ambassador and Permanent Representative, H. E. Mowaffak Allaf, the lease continued in the name of the Permanent Mission.

At the end of May, 1978, the agent of the premises offered a renewal lease to the Mission, but withdrew it a week later in June. At the end of July, despite the withdrawal, the present Ambassador and Permanent Representative, H. E. Hammoud El-Choufi, attempted to accept the offer of renewal for one year, stating that it was immaterial to him whether the lease was in the name of the Mission or in his name individually.

The agent of the premises then applied to the New York City Conciliation and Appeals Board (CAB) contending that under subdivision (e) of section 54 of the Code of the Real Estate Industry Stabilization Association of New York City (Code), the dwelling unit was not occupied as the tenant's primary residence, and therefore this tenant was not entitled to a renewal lease.

The CAB, while acknowledging that chapter 21 (§ 1, subd 5) of the Laws of 1962 as amended by section 2 of chapter 373 of the Laws of 1971, provides that rent regulation may not apply to housing accommodation "not occupied by the tenant in possession as his primary residence", nonetheless decided in an opinion signed by four members that: "Based on all the evidence of record, including the undisputed fact that the subject apartment is being utilized by the Syrian Ambassador to the United Nations as his primary place of residence, the Board determines that the owner's application for permission to refuse to offer the tenant a renewal lease is denied". There was a concurring opinion by three members to the effect that their position was not on the basis of primary residence but rather that "the owner had actually offered the tenant a renewal lease." It is assumed that this was considered by them as a form of estoppel.*

---

* Compare *Matter of East 56th Plaza v New York City Conciliation & Appeals Bd.* (80 AD2d 389).

Special Term denied the petition of the agent of this rent stabilized apartment building to set aside the CAB determination on the ground that the CAB is vested with broad discretion, and an administrative determination which has a reasonable basis should be confirmed.

The background for the Rent Stabilization Law (Administrative Code of City of New York, tit YY, ch 51) and for the Conciliation and Appeals Board and its Code can be found in the New York Rent Stabilization Law of 1969 (70 Col L Rev 156); Emergency Tenant Protection in New York: Ten Years of Rent Stabilization, by Diane Ungar (7 Fordham Urban LJ 305); *8200 Realty Corp. v Lindsay* (27 NY2d 124); *Matter of Windsor Park Tenants' Assn. v New York City Conciliation & Appeals Bd.* (59 AD2d 121). After the enactment of the Rent Stabilization Law, Governor Rockefeller in his message to the Legislature in 1971 stated that "to remove the undesirable effects of rent control without weakening legitimate tenant protections" there should be decontrol of "any apartment not used as a primary residence of the tenant". (NY Legis Ann, 1971, pp 544, 545.) His memorandum set forth that there should be decontrol "if it is established upon application of the landlord that the tenant maintains his primary residence elsewhere. Any facts or circumstances bearing upon the question of residency such as the address from which the tenant votes, files his tax returns, etc., would be relevant evidence of primary residence." (NY Legis Ann, 1971, pp 313, 314.) He further stated:

"3. Decontrol of Non-primary Residences

"Thousands of controlled apartments in New York City and elsewhere are rented by people who do not live in them. They use the apartments as a convenience, staying in them occasionally when they come to the City. Some even use them for storage. Continued controls on these apartments, indirectly subsidizing them through reduced real estate taxes, and keeping them off the market, is one of the worst inequities of rent control.

"The bill will remedy this situation by authorizing the State (or the City of New York with respect to apartments in the City), to decontrol these units after May 1, 1972,

upon a finding that they are indeed not the real home of the tenant." (NY Legis Ann, 1971, p 562.)

The CAB accordingly provided in its Code of the Real Estate Industry Stabilization Association of New York City as follows in subdivision (e) of section 54:

"The owner shall not be required to offer a renewal lease to a tenant only upon one of the following grounds * * *

"(e) * * * (1) The owner has established by facts and circumstances which in the judgment of the Conciliation and Appeals Board may have a bearing upon the question of residence, that the tenant in possession maintains his primary residence at some place other than at such housing accommodation.

"(2) In making such determination the Conciliation and Appeals Board shall give due consideration to any facts and circumstances establishing that the housing accommodation is not the tenant's primary residence, including, but not limited to, the fact that such tenant (i) specified an address other than such housing accommodation as his place of residence in any tax return, motor vehicle registration, driver's license or other document filed with a public agency, (ii) gives an address other than such housing accommodation as his voting address, or (iii) assigns and/or sublets such housing accommodation." (Cf. *Gruen v Patterson*, 79 AD2d 915.)

Obviously, for this tenant there cannot be any tax returns or voting residence, which the Governor indicated in his message and as set forth in the Code.

While the entity in interest in this matter is the Permanent Mission of Syria to the United Nations, it matters not what government may be involved, the Rent Stabilization Law and the Code, as amended, are not designed for the protection of such organizations. Moreover, the entity involved has another address, as the record shows, and it merely seeks to make available an apartment to whomever, at any stage may temporarily have the title of Ambassador and Permanent Representative.

As to the question of administrative determination, the proper standard has been set forth in *Kurcsics v Merchants*

*Mut. Ins. Co.* (49 NY2d 451, 459) : "Where the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices or entails an evaluation of factual data and inferences to be drawn therefrom, the courts regularly defer to the governmental agency charged with the responsibility for administration of the statute. If its interpretation is not irrational or unreasonable, it will be upheld. *(Matter of Howard v Wyman,* 28 NY2d 434; cf. *Ostrer v Schenck,* 41 NY2d 782, 786.) Where, however, the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency and its interpretive regulations are therefore to be accorded much less weight. And, of course, if the regulation runs counter to the clear wording of a statutory provision, it should not be accorded any weight."

The judgment of the Supreme Court, New York County (GABEL, J.), entered February 8, 1980 dismissing the petition, should be reversed, on the law, the petition to vacate the CAB determination granted, and the CAB directed to issue its order granting permission to the petitioner not to offer to the tenant a renewal lease, without costs.

BIRNS and SULLIVAN, JJ., concur with KUPFERMAN, J. P.; SILVERMAN and BLOOM, JJ., dissent and would affirm for the reasons stated by GABEL, J.

Judgment, Supreme Court, New York County, entered on February 8, 1980, reversed, on the law, the petition to vacate the respondent's determination granted, and the respondent directed to issue its order granting permission to the petitioner not to offer to the tenant a renewal lease, without costs and without disbursements.