OPINION OF THE COURT
Arnold Guy Fraiman, J.
Where the tenant in possession of a rent-stabilized apartment is occupying the apartment as his primary residence, and he is the lawful occupant of the apartment, the owner is required to offer the tenant of record a renewal lease pursuant to section 50 of the Code of the Rent Stabilization Association of New York City, Inc. (Code), regardless of whether the tenant of record is a corporation or an individual.
By this article 78 proceeding petitioner landlord seeks to. set aside a determination by respondent Conciliation and Appeals Board which found that apartment 24E in the premises at 425 East 58th Street, Manhattan, is a primary residence under subdivision E of section 54 of the Code and that the tenant thereof was therefore entitled to a renewal of its lease. Petitioner contends that respondent’s determination is arbitrary and capricious. In addition, she alleges that so much of respondent’s order which provides that the tenant is to be offered a renewal lease commencing on the *821 date of the service thereof on the tenant is unfair and inequitable. The tenant’s lease expired on April 30, 1980 and since that date tenant has occupied the apartment on a month-to-month basis, paying the same rent as provided for in the expired lease. If petitioner had offered tenant a renewal lease in May, 1980 rather than instituting the instant proceeding at that time, petitioner would have been entitled to a statutory 12% increase in rent, which she contends she has been unfairly deprived of by respondent’s determination that the new lease is to commence prospectively.
The tenant of record for- apartment 24E is Barnwell Industries, Inc., a Delaware corporation whose principal office is in Chattanooga, Tennessee. It is apparently occupied by one Morton Kinzler, Barnwell’s president. Respondent held, after a hearing, that when an apartment is rented to a corporate tenant for the use and occupancy of its employees, the primary residence test must be applied to the nature of the occupancy by the resident employee. It then found that Kinzler used the apartment as his primary residence.
Petitioner argues that the tenant of the subject apartment is the corporation, not Kinzler, and that a corporation cannot have a “residence” as that term is used in subdivision E of section 54 of the Code. She then contends that even if the court were to conclude that residence is to be determined by the nature of Kinzler’s occupancy, respondent’s determination that the apartment was Kinzler’s primary residence was unsupported by the evidence.
Petitioner’s contention that an apartment rented to a corporation cannot be the corporation’s “primary residence”, as that term is used in subdivision E of section 54, albeit an accurate observation, misses the point. Section 54 provides in relevant part that “[t]he owner shall not be required to offer a renewal lease to a tenant only upon one of the following grounds: * * * (e) * * * The owner has established * * * that the tenant in possession maintains his primary residence at some place other than at such housing accommodation.” (Emphasis added.) Thus, the statute distinguishes between “tenant” — presumably the entity which signed the lease, in this case, Barnwell Indus *822 tries — and “tenant in possession” — the actual occupant of the apartment, in this case, Kinzler. And it is the latter who must occupy the apartment as his primary residence, not the former.
The holding in Matter of Walter & Samuels v New York City Conciliation & Appeals Bd. (81 AD2d 212, app dsmd 55 NY2d 824), relied upon by petitioner, is not contrary to this analysis. In that case respondent held that an apartment rented to the Permanent Mission of Syria to the United Nations for the use of its ambassador was a primary residence because the incumbent was using the apartment as such. Special Term dismissed an article 78 proceeding brought by the landlord challenging the determination, and the Appellate Division reversed, holding (p 215) that subdivision E of section 54 was “not designed for the protection of such organizations * * * Moreover * * * [the Permanent Mission] merely seeks to make available an apartment to whomever, at any stage may temporarily have the title of Ambassador”. From the foregoing it is apparent that the Appellate Division’s determination was based upon the premise that the Mission maintained the apartment solely for the use of whoever was serving as its Ambassador to the United Nations, and that, accordingly, it was never the tenant in possession’s primary residence, as in every instance, the primary residence of the occupant would be in Syria.
Nor can the court agree with petitioner’s contention that the determination of respondent that the apartment was Kinzler’s primary residence was unsupported by the evidence. There were ample grounds to support respondent’s determination. Most significant was the total absence of any evidence that Kinzler maintained a primary residence at another location.
Turning to petitioner’s challenge to respondent’s determination that the tenant is to be offered a renewal lease commencing on the date it is served, the court agrees that such a determination, in effect, penalizes petitioner for challenging respondent’s findings. She correctly notes that by this formula petitioner is deprived of the normal increase to which she would have been entitled had she renewed the tenant’s lease on June 1, 1980, when it ex *823 pired. In the absence of evidence that petitioner’s challenge was made with intent to harass the tenant, no justification exists for giving the tenant what amounts to an unwarranted windfall, at the expense of petitioner. (Lewin v New York City Conciliation & Appeals Bd., 88 AD2d 516.) In the instant case, there is nothing in the record to suggest that petitioner’s challenge was not made in good faith. Moreover, it raised what appears to be an issue of first impression in this court concerning the rights of a corporate tenant under the Code.
For all the foregoing reasons, the petition is granted only to the extent of setting aside so much of respondent’s determination as provides that the new lease is to commence upon the date it is served upon the tenant, and directing in lieu thereof that the renewal lease to be offered petitioner is to be effective June 1, 1980. The tenant is to pay the arrearages in rent thus created, in three equal monthly installments, commencing with the first month’s rent due under the new lease.