In the Matter of VIOLA SOMMER, Doing Business as ETE Co., Appellant-Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent-Appellant.

First Department, May 12, 1983

APPEARANCES OF COUNSEL

*Mary Ellen Cronly* of counsel (*Ellis S. Franke,* attorney), for respondent-appellant.

*Sherwin Belkin* of counsel (*Gary M. Rosenberg* and *Nicholas Kamillatos* with him on the brief; *Rosenberg & Estis, P. C.,* attorneys), for appellant-respondent.

BLOOM, J.

In May, 1977, petitioner, the landlord of premises 425 East 58th Street, New York City, leased apartment 24E to Barnwell Industries, Inc., a public corporation, for a period of three years. The lease contained a rider limiting the use of the apartment to Morton L. Kinzler, the president of Barnwell, and members of his immediate family. Kinzler was required to and did personally guarantee performance of the terms of the lease.

Barnwell is a Delaware corporation. Although its plant is located in Chattanooga, Tennessee, its principal office is maintained in New York City.

Since the apartment is a rent-stabilized apartment petitioner was required to offer Barnwell a renewal lease (Code of Rent Stabilization Association of New York City, Inc. [Rent Stabilization Code], § 60) or to apply to the Conciliation and Appeals Board for permission to refuse to offer such renewal (Rent Stabilization Code, § 54). It elected the latter alternative asserting, under subdivision E of section 54 that Kinzler's primary residence was located in Chattanooga. Issue was joined by a response denying petitioner's allegation and asserting affirmatively that the New York City apartment was Kinzler's primary and, indeed, sole residence. The answer further averred that Kinzler traveled throughout the United States for business purposes. When he did so he stayed at hotels. On all other occasions — and, during the year immediately preceding, these occasions exceeded 250 days — he stayed at the apartment. In reply, petitioner asserted that Kinzler drove a vehicle with a New Jersey license plate; that he was listed in the New Jersey telephone directory with Fairlawn and Hackensack addresses; that he was listed in the Chattanooga, Tennessee, phone directory; that he had not registered to vote from the 58th Street address, and that he had not paid New York State or New York City income taxes in 1979.

Further information was required of Barnwell by the Conciliation and Appeals Board. Pursuant to the request a portion of Kinzler's Federal tax return for 1979 was provided. He also exhibited a passport and a New York State driver's license; two pistol permits issued to him by the

New York Police Department and an Office of Court Administration form indicating that he had registered with the Office of Court Administration as a member of the Bar of this State. All of these listed the East 58th Street address as his residence. Additionally, proof was submitted that he had qualified for jury duty in New York County; that his daughter attended New York University and resides with him; and that he maintained numerous bank and charge accounts which listed the East 58th Street address as his residence. The New Jersey registration of the vehicle driven by him was explained by showing that the car was owned by Barnwell and was registered to its New Jersey office. The New Jersey telephone numbers were also accounted for. The Fairlawn number was shown to be the telephone for the home at which he had lived with his family prior to his separation from his wife. Since that time he has lived at the East 58th Street address. The Hackensack number was at the address of his accountant and the listing of his name was solely for purposes of convenience. As to his failure to pay New York State and New York City income taxes for 1979, Kinzler's attorney asserted that this was done on the advice of both his accountant and attorney that he was not liable for such taxes in that year. However, the indication was that the extensive business-connected traveling outside the State which he had been required to do, the reason for such nonpayment, probably would not obtain in 1980 and that he would be required to pay such taxes for that year.

On March 26, 1981, the Conciliation and Appeals Board rendered its determination. After recounting the evidence it concluded that the premises were the tenant's primary residence and directed petitioner to offer it a renewal lease. Thereafter, petitioner brought a CPLR article 78 proceeding to review that determination. The Conciliation and Appeals Board requested that the matter be remanded back to it for further processing so that it could clarify certain matters in issue. That application was granted. After considerable delay, the matter proceeded to hearing and on April 22, 1982 the Conciliation and Appeals Board issued its amended determination. Although that determination recites the facts in somewhat greater detail than did

its initial holding, its conclusion remained the same. It directed petitioner to issue to Barnwell a one, two or three-year lease, at the tenant's option, to commence on the date a fully executed copy was served upon the tenant, to run prospectively for the term selected by the tenant. This article 78 proceeding followed. Special Term (115 Misc 2d 820) held that the Conciliation and Appeals Board was neither arbitrary nor capricious in concluding that petitioner was required to offer a renewal lease to Barnwell. However, it further held that to give effect to the renewal lease from the date upon which an executed copy is delivered to the tenant would confer a windfall upon the tenant. Hence, it directed that the renewal lease be effective June 1, 1980, with the tenant to pay the arrearages in rent in three equal monthly installments. In the circumstances here presented, we conclude that Special Term was correct. Accordingly, we affirm.

There can be little doubt but that the conclusion that the apartment in question is Kinzler's primary residence is supported by substantial evidence (*300 Gramatan Ave. Assoc. v State Div. of Human Rights,* 45 NY2d 176). There is substantial direct proof that he lives at apartment 24E in 425 East 58th Street and at no other place. On the other hand, the evidence seeking to establish that he lives elsewhere is largely circumstantial and has been adequately answered.

The central issue as framed by petitioner is whether a corporation may maintain a residence, as that term is used in the Rent Stabilization Law. To support her view, petitioner relies on *Matter of Walter & Samuels v New York City Conciliation & Appeals Bd.* (81 AD2d 212). That case, however, was decided against a background wholly different from that here presented. There, the lease in question was first entered into by the then Ambassador and Permanent Representative of the Syrian Republic to the United Nations. The intent was that the apartment be occupied by whomever was the Ambassador and Permanent Representative at the time. Subsequently the lease was renewed in the name of the mission. When that lease expired the landlord refused to renew. The Conciliation and Appeals Board ruled that a renewal of the lease was required and

directed it be issued. After confirmation by Special Term, we reversed and held that the provisions of the Rent Stabilization Law did not inure to the benefit of an organization which seeks renewal of a lease not for the benefit of any specific person but simply "to make available an apartment to whomever, at any stage may temporarily have the title of Ambassador and Permanent Representative" (p 215). The circumstances before us are a far cry from those presented in *Walter & Samuels*. Here, the lease expressly provided for occupancy by Kinzler and the members of his immediate family only. Before the lease was issued Kinzler was required to and did guarantee its performance. In sum, it was a lease which, for all practical purposes, was entered into between petitioner and Kinzler but which was executed by Barnwell so that it could derive certain tax benefits and so that Kinzler could derive certain personal benefits. Neither consideration detracts from the reality that Kinzler was the "tenant in occupancy" within the meaning of section 60 of the Rent Stabilization Code.

Petitioner endeavors to analogize subdivision a of section 55 of the New York City Rent and Eviction Regulations, and subdivision B of section 54 of the Rent Stabilization Code, both of which authorize the issuance of a certificate of eviction where a landlord seeks in good faith to recover possession of a housing accommodation for his own personal use and occupancy or for the use and occupancy of his immediate family, with the case at bar, noting that under both subdivision a of section 55 and subdivision B of section 54 corporate landlords are excluded (*Matter of Colin v Altman*, 39 AD2d 200; *Henrock Realty Corp. v Tuck*, 52 AD2d 871). The situations do not lend themselves to comparison. Exclusion of a tenant from possession runs counter to the purpose of the rent laws. Hence, the exceptions created by subdivision a of section 55 and subdivision B of section 54 are properly strictly construed. This would be equally true of subdivision E of section 54 of the Rent Stabilization Code, which permits refusal to renew the lease because the premises are not occupied as the primary residence of the tenant. On the other hand, section 60 of the Rent Stabilization Code, which requires renewal of the

lease, implements the purposes for which the rent laws were enacted. Accordingly, it is to be construed liberally. In directing that the renewal lease be tendered, the Conciliation and Appeals Board acted rationally and in accordance with the proof submitted to it.

The second issue presented concerns the date upon which the renewal lease shall become effective. The rule heretofore applied by the Conciliation and Appeals Board and to which hitherto we have given our approval, requires that such lease shall be prospective only and shall take effect when an executed copy of the lease is delivered to the tenant (*Matter of Briar Hill Apts. v Conciliation & Appeals Bd.*, 44 AD2d 816). In holding that the lease in this case shall be effective as of June 1, 1980, we do not intend to abrogate that rule. We hold merely that the delay between the initial application by petitioner and the ultimate determination was so inordinate as to render it grossly inequitable to apply it to this case. Indeed, if Barnwell had been offered a lease when the prior one had expired and had selected the maximum term available under the law, that term would now be in the throes of expiration. By consequence, and solely by reason of this circumstance, we hold that the renewal lease shall be effective as of the day following the expiration of the old lease, i.e., June 1, 1980 and that the arrearage shall be paid in three equal monthly installments.

Accordingly, the judgment of the Supreme Court, New York County (FRAIMAN, J.), entered December 9, 1982 which confirmed so much of respondent's determination as directed petitioner to issue a renewal lease to the tenant and vacated so much thereof as required that the lease be effective as of the date that an executed copy of the renewal lease is delivered to the tenant and also directed that such lease be effective as of June 1, 1980, with arrears to be paid in three equal monthly installments is affirmed, without costs.

ASCH, J. (dissenting). I disagree with the majority and would reverse the judgment confirming the determination of the respondent Conciliation and Appeals Board on the ground that a corporation, here a foreign corporation, leasing an apartment in New York City is not protected by

subdivision E of section 54 of the Code of the Rent Stabilization Association of New York City, Inc. (Rent Stabilization Code).

Chapter 373 of the Laws of 1971 amended subdivision 5 of section 1 of chapter 21 of the Laws of 1962 (Local Emergency Housing Rent Control Act) by adding the following *inter alia:* "no local law or ordinance shall subject to such regulation and control any housing accommodation which is not occupied by the tenant in possession as his primary residence". Governor Rockefeller's memorandum approving chapter 373 stated, *inter alia:* "Thousands of controlled apartments in New York City and elsewhere are rented by people who do not live in them. They use the apartments as a convenience, staying in them occasionally when they come to the City. Some even use them for storage. Continued controls on these apartments, indirectly subsidizing them through reduced real estate taxes, and keeping them off the market, is one of the worst inequities of rent control" (NY Legis Ann, 1971, p 562).

The implementing statute, the Code of the Rent Stabilization Association, provides in subdivision E of section 54: "The owner shall not be required to offer a renewal lease to a tenant only upon one of the following grounds * * * E * * * (1) The owner has established by facts and circumstances which in the judgment of the Conciliation and Appeals Board may have a bearing upon the question of residence, that the tenant in possession maintains his primary residence at some place other than at such housing accommodation. (2) In making such determination the Conciliation and Appeals Board shall give due consideration to any facts and circumstances establishing that the housing accommodation is not the tenant's primary residence, including, but not limited to, the fact that such tenant (i) specified an address other than such housing accommodation as his place of residence in any tax return, motor vehicle registration, driver's license or other document filed with a public agency, (ii) gives an address other than such housing accommodation as his voting address, or (iii) assigns and/or sublets such housing accommodation."

The tenant and lessee of the apartment herein is Barnwell Industries, Inc. Barnwell is a foreign corporation

chartered in Delaware with its principal place of business in Chattanooga, Tennessee. Voting records and filing of individual tax returns are stated in the Governor's memorandum (*supra*) as indicia of primary residence. A foreign corporate lessee cannot provide these indicia of primary residence. Similarly, section 54 (subd E, par [2], cl [i]) of the Rent Stabilization Code enumerates various other indicia of primary residence, including motor vehicle registration, driver's license or other documents filed with a public agency. These indicia also pertain to a natural person renting an apartment, not a foreign corporate lessee. As this court has previously stated in considering the applicability of subdivision E of section 54 to a tenant-lessee which was a foreign mission to the United Nations: "Obviously, for this tenant there cannot be any tax returns or voting residence, which the Governor indicated in his message and as set forth in the Code * * * the Rent Stabilization Law and the Code, as amended, are not designed for the protection of such organizations" (*Matter of Walter & Samuels v New York City Conciliation & Appeals Bd.*, 81 AD2d 212, 215, app dsmd 55 NY2d 824).

I doubt that any corporation can maintain a "residence" as that term is used in the housing laws. Even assuming that one could, it most certainly would not be true of the tenant herein which is a foreign corporation with its principal place of business in Tennessee.

Analogy can be drawn between subdivision E of section 54 herein and subdivision B of section 54 of the Rent Stabilization Code and subdivision a of section 55 of the New York City Rent and Eviction Regulations, all of which deal with the recovery by landlords of housing accommodations for their own personal use. All of these latter sections have been held to exclude corporate landlords (see *Matter of Colin v Altman*, 39 AD2d 200; *Henrock Realty Corp. v Tuck*, 52 AD2d 871). As this court noted: "A corporation has no compelling necessity to occupy housing accommodations, nor does it have a family, immediate or otherwise" (*Matter of Colin v Altman, supra*, at p 202). Where the application of a statute or its interpretation involve understanding of operational practices or an evaluation of factual data and inferences to be drawn therefrom,

the courts regularly defer to the agency charged with the administration of the statute. Where the issue is one of pure statutory reading and analysis, however, the interpretive regulations of the agency are to be accorded much less weight (*Matter of Howard v Wyman,* 28 NY2d 434).

The plain language of the statute and the implementing code plus the express mandate of the statute as expressed in the Governor's memorandum are contravened by the extension of the protection of subdivision E of section 54 to a corporation and a fortiori a foreign corporation. (See *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 596-597.)

If I were not reversing on the above ground, I would reverse on the alternate ground that the protection of this section should not be extended to an occupant who admittedly did not pay any New York State or New York City income tax during at least part of the period herein. The occupant, Morton H. Kinzler, who is the president and chief executive officer of Barnwell Industries, was considered by Special Term to be the "tenant in possession" (115 Misc 2d 820, 822). However, Mr. Kinzler did not sign any lease and at best can be considered a mere licensee. Barnwell was the lessee herein and the only landlord-tenant relationship created by the lease was between it and the petitioner-landlord.

Pursuant to the Tax Law, a resident tax return is required to be filed by an individual who is domiciled in this State when he or she spends at least 30 days at his apartment in New York. A resident tax return is required to be filed by one not a domiciliary of this State but who maintains a permanent residence and spends more than 183 days of the taxable year in New York (Tax Law, § 605). In the tenant's answer to the Conciliation and Appeals Board application of the landlord, dated June 2, 1980, the tenant Barnwell Industries, Inc., asserted that "Mr. Kinzler spent well over 250 nights in the subject apartment in New York during [the last twelve months]". In Conciliation and Appeals Board Order and Opinion No. 15,728, it is stated that Mr. Kinzler was not liable for State and city taxes for calendar year 1979 because of several factors, *one of which was extensive travel by him outside of New York*

*State* in 1979. It is obvious that either this apartment was *not* Mr. Kinzler's primary residence or that some form of tax fraud or evasion took place.

The courts should strain to avoid placing any intimation of illegality upon the actions of a party in a civil proceeding. I would therefore deem Mr. Kinzler's nonpayment of State and city taxes for all or part of the pertinent period a conclusive presumption of his nonresident status. This would comport with the public policy of this State — to make housing available at reasonable rents to residents — as shown by the legislative history, *supra.*

Accordingly, the judgment of the Supreme Court, New York County (FRAIMAN, J.), entered December 9, 1982, should be reversed, on the law and facts, without costs, and the matter remanded to the respondent Conciliation and Appeals Board to issue an order holding that the subject premises are not the primary residence of the tenant Barnwell Industries, Inc.

ROSS, J. P., FEIN and ALEXANDER, JJ., concur with BLOOM, J.; ASCH, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on December 9, 1982, affirmed, without costs and without disbursements.