In the Matter of CALE DEVELOPMENT CO., INC., et al., Respondents, v CONCILIATION AND APPEALS BOARD, Respondent, and DANIEL GERSEN, Appellant.

First Department, June 21, 1983

**APPEARANCES OF COUNSEL**

*Stanley M. Ackert, III,* of counsel (*Blum Haimoff Gersen Lipson Garley & Niedergang,* attorneys), for appellant.

*Anthony Napolitano* of counsel (*Probstein & Napolitano,* attorneys), for respondents.

**OPINION OF THE COURT**

SULLIVAN, J.

Cale Development Co., Inc., a Herkimer, New York based, closely held domestic corporation, leased a small studio apartment at 100 West 57th Street in New York City, for a three-year term commencing May 1, 1972, from Douglas L. Elliman & Co., Inc., managing agent for the then landlord. The original lease, a standard form of apart-

ment lease, which was signed by R. J. Castle as president of Cale, had a typewritten rider, paragraph No. 29, which provided "that during the term of this lease the apartment hereby leased is to be occupied by Mr. and Mrs. R. J. Castle." Paragraph No. 2 of the lease, however, part of the standard form, stated that "[t]he demised premises and any part thereof shall be occupied only by Tenant and the members of the immediate family of Tenant, and as a strictly private dwelling apartment and for no other purpose."

The lease was renewed in 1975 and again, with Daniel Gersen as landlord, in 1978 for a three-year term ending April 30, 1981. When the building was converted to co-operative ownership under a noneviction plan declared effective in December, 1977 Cale elected not to exercise its option to purchase the shares allocated to the apartment, which apartment is subject to the New York City Rent Stabilization Law (see Administrative Code of City of New York, §§ YY51-1.0 — YY51-8.0). These shares were purchased by Gersen, a member of the law firm which represented the plan's sponsor. Thus, Gersen became the holder of the proprietary lease and Cale's successor landlord, subject to the terms of the original lease.

Apparently, the apartment served as a *pied-à-terre* since it is conceded that Mr. and Mrs. Castle, who reside in Little Falls, New York, never occupied it as their primary residence. In August, 1979 their son, Michael Castle, moved into the apartment, where he has resided ever since. In January, 1981, prior to the expiration of the last renewal, Gersen, alleging that the apartment was not being used by the tenant as its primary residence, filed an application with the Conciliation and Appeals Board pursuant to subdivision (e) of section 54 of the Code of the Rent Stabilization Association of New York City, Inc.[1] (Rent

---

1. Subdivision (e) of section 54 of the Rent Stabilization Code provides: "The owner shall not be required to offer a renewal lease to a tenant * * * [when] (1) [t]he owner has established * * * that the tenant in possession maintains his primary residence at some place other than at such housing accommodation * * * (3) Whenever the Conciliation and Appeals Board determines that a dwelling unit is not occupied by the tenant in possession as his primary residence, it shall so certify to the Housing and Development Administration and the Rent Stabilization Association."

Stabilization Code) for permission to deny Cale a renewal lease. Cale opposed the application, arguing that it is entitled to a renewal lease since the actual occupant of the apartment, Michael Castle, a member of the immediate family of R. J. Castle, Cale's president, and a Cale corporate officer himself, maintains his primary residence there. The board granted the application, finding, *inter alia,* that "the apartment was to be occupied by Mr. Robert Castle as President of the corporate lessee and his wife, Jean Castle" and that "the intended occupants do not use the subject apartment as their primary residence."

After Cale's application for reconsideration was denied Gersen served a 30-day notice of termination of the month-to-month tenancy and instituted a holdover proceeding to recover possession. Cale responded by commencement of this CPLR article 78 proceeding. Special Term granted Cale's petition to the extent of remanding the matter to the board for a hearing on the issue of whether Michael Castle is an officer or an employee of the corporate lessee, or both and stayed the summary proceeding pending the board's further determination. Since Michael Castle's status as a corporate officer or employee is irrelevant to the issue of Cale's right to a lease renewal and the board's determination is rationally based, we reverse, dismiss the petition and vacate the stay.

The primary residence decontrol law (L 1971, ch 373, § 2), which amended chapter 21 (§ 1, subd 5) of the Laws of 1962 (Local Emergency Housing Rent Control) effective May 1, 1972 to provide in part: "[N]o local law or ordinance shall subject to such regulation and control any housing accommodation which is not occupied by the tenant in possession as his primary residence", was intended to alleviate the shortage of housing in New York City by returning underutilized apartments to the market place. (See Memorandum of State Executive Dept, NY Legis Ann, 1971, p 314.) In approving the bill the Governor noted (NY Legis Ann, 1971, p 562):

"Thousands of controlled apartments in New York City and elsewhere are rented by people who do not live in them. They use the apartments as a convenience, staying

in them occasionally when they come to the City. Some even use them for storage. Continued controls on these apartments, indirectly subsidizing them through reduced real estate taxes, and keeping them off the market, is one of the worst inequities of rent control." Subdivision (e) of section 54 of the Rent Stabilization Code was promulgated by the Rent Stabilization Association, with the approval of the Housing and Development Administration, to implement this legislative change.

A corporate tenant which leases an apartment for the use and occupancy of an officer, director or employee is entitled to a renewal lease, provided it can meet the primary residence test set forth in subdivision (e) of section 54 of the Rent Stabilization Code. (See *Matter of Sommer v New York City Conciliation & Appeals Bd.*, 93 AD2d 481.) As noted in its opinion in this case (No. 18,686) the board has repeatedly held that where an apartment is leased to a corporate tenant for the use and occupancy of an officer, director or employee, the primary residence test is applied, not to the corporation, but to the actual occupant of the apartment.[2] As with all administrative agencies, the board's "construction and interpretation of its own regulations and of the statute under which it functions is entitled to the greatest weight." (*Matter of Herzog v Joy*, 74 AD2d 372, 375; see *Hotel Armstrong v Temporary State Housing Rent Comm.*, 11 AD2d 395; see, also, *Matter of Pell v Board of Educ.*, 34 NY2d 222.)

In *Sommer* (*supra*), which involved a lease provision limiting occupancy to the president of the corporate tenant, who was named in the lease, and members of his immediate family, we affirmed a board determination that the tenant was entitled to a renewal lease since its president used the premises as his primary residence. This court's decision in *Matter of Walter & Samuels v New York City Conciliation & Appeals Bd.* (81 AD2d 212, app dsmd 55 NY2d 824), to the extent it indicates a view contrary to *Sommer* (*supra*), must be limited to its peculiar facts. There, the landlord's agent withdrew an offer of renewal to Syria's Permanent Mission to the United Nations on the

2. See New York City Conciliation & Appeals Bd. Opns. Nos. 2387, 2588, 2612, 2910 and 12010.

ground that the dwelling unit was not occupied by the tenant as its primary residence. In holding that the Rent Stabilization Law and Code "are not designed for the protection of such organizations" (*Matter of Walter & Samuels v New York City Conciliation & Appeals Bd., supra,* p 215) we noted that ambassadors are periodically changed, that they cannot satisfy such code criteria for determining residence as establishing an address for voting or tax return purposes, and that the Mission "merely seeks to make available an apartment to whomever, at any stage may temporarily have the title of Ambassador and Permanent Representative" (*supra,* p 215). The *ratio decidendi* of our determination in *Walter & Samuels* (*supra*), however, supports the board's decision in this case. While an apartment lease confers the same rights and imposes the same obligations upon a corporate tenant as upon an individual, it is a fiction that such a lease contemplates actual occupancy of the apartment as a private dwelling by the corporation, an artificial "person" created by law. Only the individual for whose benefit the fiction is created can occupy an apartment as a dwelling.

Here, the lease, while naming Cale as the tenant, did not provide that the apartment could be used by any corporate officer or employee, but, instead, specifically limited occupancy to Castle and his wife. Indeed, the language of paragraph 29 appears to be taken directly from the information provided in the lease application. When asked for the "[n]ames of all persons who will reside in the apartment and if children, state number and their approximate ages," Cale furnished the name of Mr. and Mrs. Castle. Moreover, in conjunction with its application, Cale submitted a certificate of corporate resolution which provided, "[i]t is hereby RESOLVED that Robert J. Castle of Cale Development Co., Inc. is authorized to sign a lease on behalf of this Corporation for Apartment 11-L at 100 West 57th Street, New York, N. Y. to be used by Mr. Robert J. Castle." Cale never sought, either during the term of the original lease or on the two occasions when it was renewed, to modify the provisions of paragraph 29.

While the typewritten provision of paragraph 29 limiting occupancy to Mr. and Mrs. Castle is clearly inconsis-

tent with paragraph 2 of the standard form which allows occupancy by members of the tenant's immediate family, the board correctly interpreted the lease so that paragraph 29 was controlling. It is a well-established rule of construction that the written or typewritten portions of an agreement represent an express manifestation of the parties' actual intentions and take precedence over any inconsistent provisions in the printed form. (*Laurino v Hewman,* 10 AD2d 725, citing *Poel v Brunswick-Balke-Collender Co. of N. Y.,* 216 NY 310, 322; *Heyn v New York Life Ins. Co.,* 192 NY 1.)

Moreover, it should be noted that paragraph 29 limited occupancy to Mr. and Mrs. Castle by name and not by title or office. It did not extend the right of occupancy to the corporate tenant's president. Yet, even if the limitation is read to mean the "president" of Cale, R. J. Castle's title, it is beyond dispute, based upon the record, that Michael Castle, though he may well be a corporate officer, is not Cale's president. Lease interpretation is subject to the same rules of construction as are applicable to other agreements. (*Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 217.) The parties' intention should be determined from the language employed, and where the language is clear and unambiguous, interpretation is a matter of law to be determined solely by the court. (*Hartford Acc. & Ind. Co. v Wesolowski,* 33 NY2d 169, 171-172; *Bethlehem Steel Co. v Turner Constr. Co.,* 2 NY2d 456.) In such circumstances resort cannot be had to extrinsic evidence to contradict the express terms of the writing. (*Brainard v New York Cent. R. R. Co.,* 242 NY 125.) Thus, the question of Michael Castle's status as a corporate officer or employee is irrelevant since, clearly, the lease did not give a right of occupancy to the corporate tenant's officers or employees. Where, as here, a corporate tenant enters into a written lease designating specific individuals rather than a class of individuals as the sole occupants of the apartment, the determination of primary residence, and with it the right to renewal, turns on the primary residence of the occupants named in the lease and no one else. While, as already indicated, a corporate tenant is entitled to a renewal lease provided it can meet the primary residence test, rent

stabilization was never intended to place such a tenant's leasehold estate in perpetual trust for the benefit of whomever, at a particular point in time, might happen to occupy a corporate office. As one court has noted, "[A] rent stabilized apartment may not be passed along like a baton in a relay race" (*Melohn v Heins,* NYLJ, April 9, 1981, p 10, col 5).

Even if we were inclined to read paragraphs 29 and 2 of the lease as a hybrid permitting an immediate family member of the designated occupants to become a legal occupant of the apartment, Cale would not be entitled to a renewal lease. This court has previously held, albeit in a rent control context, that the transferral of lease rights to family members extends only to a surviving spouse or other family member who had been living with the tenant or "to those family members who lived with a voluntarily vacated primary tenant." (*Matter of Herzog v Joy,* 74 AD2d 372, 376, *supra,* citing cases.) Since the same concerns are being addressed, we know of no reason why this principle should not apply in a rent stabilization situation to the interpretation of paragraph 2, the occupancy clause of the standard form apartment lease. (See, generally, *Henrock Realty Corp. v Tuck,* 52 AD2d 871.) In that regard the board correctly noted that Michael Castle "never resided in the apartment simultaneously with his parents, the intended occupants."

The board's determination that Mr. and Mrs. Castle do not use the apartment as their primary residence has a rational basis and is consistent with settled law. Thus, the corporate tenant was not entitled to a renewal lease.

Accordingly, the judgment, Supreme Court, New York County (KLEIMAN, J.), entered October 14, 1982, which, *inter alia,* granted the petition to the extent of remanding the matter to the Conciliation and Appeals Board should be reversed, on the law, without costs or disbursements, the petition dismissed and the stay vacated.

KUPFERMAN, J. P., SANDLER, BLOOM and ALEXANDER, JJ., concur.

Judgment, Supreme Court, New York County, filed on October 14, 1982, unanimously reversed, on the law, with-

out costs and without disbursements, the petition dismissed and the stay vacated.