◼ In the Matter of VIOLA SOMMER, Doing Business as ETE Co., Respondent, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Appellant. — Judgment, Supreme Court, New York County (Richard W. Wallach, J.), entered August 23, 1983, which granted a CPLR article 78 petition brought by the landlord to annul an opinion and determination of the New York City Conciliation and Appeals Board directing that a renewal lease be offered to the tenant, unanimously reversed, on the law, without costs, the petition is dismissed, and the landlord is directed to offer the tenant a renewal lease for a one- or two-year term at the tenant's option, commencing on the date a fully executed copy is served on the tenant, at a rental in accordance with the Rent Guidelines Board

order then in effect. ¶ Under a two-year lease commencing September 1, 1976, the petitioner landlord rented apartment 23D at 425 East 58th Street, Manhattan, to the Secretary of Foreign Affairs, Manila, Philippines. The lease, which was signed for the Secretary of Foreign Affairs by "Ernesto C. Pineda, Philippine Consul General", had a rider annexed limiting use of the demised premises to "Mr. Pineda Consul General or his successor". The lease was renewed for two-year terms commencing September 1, 1978 and September 1, 1980. The riders to the 1980 renewal, which together govern the rights of the parties in the particular case before us, provide as here pertinent that occupancy was limited to Sr. Pineda and his immediate family, with any deviation from this provision giving the landlord the right to terminate the lease upon three days' notice. Sr. Pineda and his family have continuously occupied the subject apartment since 1976. ¶ On February 23, 1982 the landlord filed with the New York City Conciliation and Appeals Board (CAB) an application for permission to refuse to renew the lease under subdivision E of section 54 of the Code of the Rent Stabilization Association of New York City, Inc. (Code) on the alleged ground that the apartment was not occupied by Sr. Pineda and his family as their primary residence. Subdivision E of section 54 of the Code provides in pertinent part that "The owner shall not be required to offer a renewal lease to a tenant [where] * * * E * * * (1) The owner has established by facts and circumstances which in the judgment of the Conciliation and Appeals Board may have a bearing upon the question of residence, that the tenant in possession maintains his primary residence at some place other than at such housing accommodations." By letter dated March 24, 1982 the landlord urged the CAB to find that the case was controlled by this court's decision in *Matter of Walter & Samuels v New York City Conciliation & Appeals Bd.,* (81 AD2d 212, app dsmd as moot 55 NY2d 824). Thereafter Sr. Pineda filed a complaint with the CAB based on the landlord's refusal to renew the lease. ¶ On June 30, 1983 the CAB rendered its opinion No. 25,174 noting the many documents listing the subject apartment as the address of Sr. Pineda and members of his family, including driver's license, immigration documents, New York State identification card for diplomatic and consular tax exemption, bank interest income statement, telephone bills, etc., as well as the lease provisions restricting occupancy to Sr. Pineda and his family. The CAB, in ruling in favor of the tenant herein, identified several of its prior rulings to the effect that "apartments rented to corporate tenants or to foreign missions to the United Nations but utilized by its employee(s) for residential purposes are subject to the Rent Stabilization Law" and cited, in further support of this position, *Matter of Sommer v New York City Conciliation & Appeals Bd.* (115 Misc 2d 820), a case involving the same landlord, the same building, and the same issue, but a different (corporate) tenant, subsequently affirmed by this court (93 AD2d 481). ¶ The landlord commenced an article 78 proceeding to set aside the CAB determination. Special Term held, relying on *Walter & Samuels (supra),* "that the subject apartment is not the primary residence of Sr. Ernesto C. Pineda or his family, but rather the prime lessee as shown by the lease is the Secretary [of] Foreign Affairs, Manila, Philippines and Sr. Pineda is merely the current licensee entitled to occupy the premises as the secretary's delegate by reason of his official position only. Accordingly, Sr. Pineda is not entitled to the tender of a renewal lease, which would otherwise be required under the Rent Stabilization Law." ¶ We disagree, and accordingly reverse the judgment appealed from, dismiss the petition, and direct the petitioner to tender a prospective renewal lease to the tenant. The issue presented seems to us controlled not by *Walter & Samuels* (81 AD2d 212) but rather by the more recent decisions in *Matter of Sommer v Conciliation & Appeals Bd.* (93 AD2d 481) and *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.* (94 AD2d 229). ¶ In *Walter &*

*Samuels,* the Permanent Mission of Syria to the United Nations leased an apartment to be occupied by whoever might temporarily have the title of Ambassador and Permanent Representative. A closely divided court held that the only named tenant, the Mission, had another address, did not occupy the subject apartment as its primary residence, and was not entitled to a renewal lease under the Rent Stabilization Law and the Code. The lease in the instant case provides, in clear distinction to *Walter & Samuels,* that the sole authorized occupant is Sr. Pineda and his immediate family, and that if they were to cease to occupy the premises, or allow another person to occupy the apartment without the landlord's written consent, the landlord would have the right to terminate the lease. ¶ An almost identical jural relationship was presented in *Matter of Sommer v New York City Conciliation & Appeals Bd.* (93 AD2d 481), wherein Barnwell Industries, Inc., a foreign corporation, leased an apartment to be occupied only by Barnwell's president, Morton L. Kinzler, and members of his immediate family. We held (pp 482-483) that Kinzler had sufficient contacts with the subject apartment to support the CAB's determination that the apartment was his primary residence and that Kinzler was the "tenant in occupancy" within the meaning of section 60 of the Code despite the fact that Barnwell Industries was the named lessee (p 485). Aside from the circumstance that here a foreign government is involved and Sr. Pineda did not personally guarantee performance under the lease as did Mr. Kinzler, both differences without legal significance, the facts herein are indistinguishable from those in *Matter of Sommer (supra).* ¶ We stated in *Matter of Cale Dev. Co. v Conciliation & Appeals Bd.* (94 AD2d, at p 232), that *Matter of Walter & Samuels,* to the extent it indicates a view contrary to *Matter of Sommer,* must be limited to its peculiar facts. In *Cale* (94 AD2d, at p 234), we reaffirmed the applicable rule: "Where, as here, a corporate tenant enters into a written lease designating specific individuals rather than a class of individuals as the sole occupants of the apartment, the determination of primary residence, and with it the right to renewal, turns on the primary residence of the occupants named in the lease and no one else." ¶ We observe that when the Nonprimary Residence Decontrol Law (L 1971, ch 373, § 2) amended the Local Emergency Housing Rent Control Act (L 1962, ch 21) to provide in part that "no local law or ordinance shall subject to such regulation and control any housing accommodation which is not occupied by the tenant in possession as his primary residence", the Governor noted in his approval message (NY Legis Ann, 1971, p 562): "3. Decontrol of Non-primary Residences (A.7056) Thousands of controlled apartments in New York City and elsewhere are rented by people who do not live in them. They use the apartments as a convenience, staying in them occasionally when they come to the City. Some even use them for storage. Continued controls on these apartments, indirectly subsidizing them through reduced real estate taxes, and keeping them off the market, is one of the worst inequities of rent control. The bill will remedy this situation by authorizing the State (or the City of New York with respect to apartments in the City), to decontrol these units after May 1, 1972, upon a finding that they are indeed not the real home of the tenant." In light of the arrangement explicitly agreed to by both parties in the riders to the 1980 renewal, we perceive no violation in the CAB determination of either the letter or spirit of the 1971 amendment. Concur — Sandler, J. P., Sullivan, Ross, Lynch and Kassal, JJ.