■ In the Matter of VIOLA SOMMER, Doing Business as ETE Co., Respondent-Appellant, v NEW YORK CITY CONCILIATION AND APPEALS BOARD, Respondent. J.R.D. SALES, INC., Intervenor-Appellant-Respondent.—Judgment, Supreme Court, New York County (McCooe, J.), entered August 1, 1984, which granted a petition to annul the determination of respondent Conciliation and Appeals Board (CAB) directing petitioner to offer its tenant a renewal lease only to the extent of setting aside that portion of the CAB's order which provided that the lease renewal commence on the date it is served upon the

tenant, modified, on the law, to deny the petition, dismiss the proceeding, and to reinstate the determination of the CAB in its entirety, as modified, affirmed, without costs.

This litigation arises from the most recent of a series of efforts by petitioner-respondent-cross-appellant Viola Sommer to terminate the tenancy of intervenor-respondent-appellant J.R.D. Sales (tenant) in apartment 34-H of the building located at 425 East 58th Street in Manhattan. Petitioner landlord owns the unsold shares allocated to the apartment under a noneviction cooperative conversion plan. Since September 1, 1974, Frank Mandelbaum, an officer in J.R.D. Sales, and his immediate family have occupied the apartment pursuant to a rider in the lease held by J.R.D. Sales, the tenant of record, which specifies that the apartment is to be "occupied by Mr. Frank Mandelbaum and members of his immediate family, for dwelling purposes only."

Petitioner failed to tender a renewal lease to the tenant within the 150- to 120-day period prior to expiration of the lease, pursuant to Code of the Rent Stabilization Association of New York City, Inc. § 60 (Rent Stabilization Code). The tenant ultimately rejected the renewal lease offered to it in October 1980 because, *inter alia,* the lease was back-dated two months to commence on the date that the preexisting lease had expired. For approximately one year petitioner made efforts to evict the tenant, interspersed with negotiations on a renewal lease. In December 1981, the landlord filed an application with the CAB pursuant to Rent Stabilization Code § 54 (E), requesting permission not to renew the lease on the ground of nonprimary residence. Petitioner asserted that a corporate entity cannot document its residence and cannot maintain an apartment as a primary residence as a matter of law.

In Opinion No. 21,811, dated August 12, 1982, the CAB, *inter alia,* dismissed the landlord's application and directed her to tender a renewal lease to "commence on the date a fully executed copy is served upon the tenant". The CAB reiterated its holding in prior cases that the primary residence test under section 54 (E) is applied to the nature of the employee occupancy where an apartment is leased to a corporate tenant for the use and occupancy of its employee. In December 1982, the CAB granted the landlord's request for reconsideration and reopened the proceeding. Pending reconsideration of the matter, the Omnibus Housing Act ([OHA], L 1983, ch 403) was enacted to amend the Emergency Tenant Protection Act of 1974 ([ETPA], L 1974, ch 576, § 4). By letter

to the CAB, the landlord urged that the OHA abrogated prior decisional law entitling a corporate tenant to maintain a rent-stabilized apartment. On September 29, 1983, the CAB amended its opinion to conform to OHA by adding the provision that if a three-year lease term were selected by the tenant, it would commence on September 15, 1983. The CAB otherwise adhered to its original determination. Special Term confirmed the CAB's determination, except that it found a prospective lease would be inequitable in the face of the inordinate delay. Petitioner's appeal and the tenant's cross appeal ensued. The New York State Division of Housing and Community Renewal, the successor to the CAB under the OHA, appears as respondent on the appeal.

The CAB's determination in its entirety had a rational basis, was neither arbitrary nor capricious, nor an abuse of discretion, and should be confirmed. A corporate tenant which leases a rent-stabilized apartment for the use and occupancy of specific individuals, named in the lease, is entitled to a renewal lease where, as here, it is undisputed that the occupant meets the primary residence test. *(Matter of Sommer v New York City Conciliation & Appeals Bd.,* 115 Misc 2d 820 [Sup Ct, NY County 1982], *affd* 93 AD2d 481 [1st Dept 1983], *affd on opn of Bloom, J., at App Div* 61 NY2d 973 [1984]; *see, Matter of Cale Dev. Co. v Conciliation & Appeals Bd.,* 94 AD2d 229, 233-234 [1st Dept 1983], *affd* 61 NY2d 976 [1984].) In any event, having failed to give notice of her intention not to offer a renewal lease on the ground of nonprimary residence within the statutorily mandated period, petitioner may not challenge the tenant's right to a renewal lease. *(See, Golub v Frank,* 65 NY2d 900 [1985].)

We cannot agree with Special Term that it would be grossly inequitable to require petitioner to make the lease prospective, since the hiatus between leases is attributable in large measure to petitioner's efforts to circumvent the law. *(Matter of Briar Hill Apts. v Conciliation & Appeals Bd.,* 44 AD2d 816 [1st Dept 1974].)* In addition to waiting one year to attempt to remedy her dereliction by seeking the CAB's permission not to offer a renewal lease, petitioner has failed to obey Special Term's order and the CAB determinations directing her to offer such a lease. *Matter of Sommer (supra),* a case involving another of petitioner's tenants, is factually distinguishable in this regard. A balancing of the equities did not disfavor petitioner there, because she had timely offered a renewal lease.

Our dissenting colleague concludes that two recent amend-

ments to ETPA § 5 (a) (11) repealed prior decisional law to exclude corporate tenants from protected status under the rent stabilization law. (McKinney's Uncons Laws of NY § 8625 [a] [11], *as amd by* L 1983, ch 403, § 55; L 1984, ch 940, § 3.) If the Legislature had intended to change decisional law and exempt corporate tenants from coverage, it would have done so in clear, unequivocal language. Such an interpretation of ETPA § 5 (a) (11) does not further the legislative purpose of restoring underutilized apartments to the housing market. *(Sommer v Lenoir/Hickory Knitting Mills,* 128 Misc 2d 481, 483 [App Term, 1st Dept 1985].) Significantly, the 1984 amendment extended coverage, not to not-for-profit hospitals per se, but rather to authorized, affiliated subtenants residing in housing accommodations *rented* to not-for-profit hospitals. The principal *expressio unius est exclusio alterius* lends no support to the proposed interpretation. The extension of coverage to the class of subtenants affiliated with not-for-profit hospitals renting housing accommodations does not implicitly exclude coverage of any other entity or class of accommodations. The necessity for the 1984 amendment apparently stemmed from the elimination of coverage previously enjoyed by this class of "subtenants" as a result of the 1983 amendment. *(Compare,* McKinney's Uncons Laws of NY § 8625 [a] [6] [housing accommodations owned or operated, or in buildings operated by, hospitals or other eleemosynary organizations on a not-for-profit basis are exempt from rent stabilization].) Concur—Kupferman, J. P., Fein, Milonas and Rosenberger, JJ.

Asch, J., dissents in a memorandum as follows: I would reverse and therefore dissent from the determination of the majority. My position is based on the analysis that the Omnibus Housing Act of 1983 (L 1983, ch 403) in effect changed the law so that a corporation would no longer have the benefit of the rent stabilization law. Thus, section 55 of chapter 403 amended Emergency Tenant Protection Act of 1974 § 5 (a) (11) (L 1974, ch 576, § 4) to exempt from the Emergency Tenant Protection Act's coverage "(11) housing accommodations which are not occupied by the tenant, *not including subtenants or occupants,* as his primary residence" (emphasis added). Thus, the focus of the exemption provided for nonprimary residences is upon the party in privity with the owner, i.e., the tenant named in the lease.

Legislation enacted subsequent to chapter 403, i.e., Laws of 1984 (ch 940, § 3), once again amended Emergency Tenant Protection Act § 5 (a) (11) by adding the following additional language: "For the purposes of this paragraph, where a hous-

ing accommodation is rented to a not-for-profit hospital for residential use, affiliated subtenants authorized to use such accommodations by such hospital shall be deemed to be tenants." There would have been no need explicitly to give not-for-profit hospitals the right to renew leases for apartments rented to subtenants if corporations already had that right.

Moreover, the statutory construction maxim of *expressio unius est exclusio alterius* is applicable. One and only one type of entity is exempted from the general rule that the issue of primary residence is determined by reference to the tenant of record. This single expressed exemption thus precludes the exemption of other types of entities from the general rule. If the corporation is a not-for-profit hospital and the apartment is occupied by personnel affiliated with the hospital, the residence of the occupant determines the issue of primary residence. Since the tenant herein is not a not-for-profit hospital, it does not fall within the exception. The issue of primary residence must therefore be determined by reference to the tenant of record, and in this case the tenant of record is the corporation, which, of course, cannot maintain a "residence".

There may be certain situations in which the "business purpose" of a corporation is well served when it leases residential property to house one of its principals or officers. However, it seems fairly obvious that this may simply be a device to have the corporation pick up the rent of a preferred individual without benefit to the corporation at all. It does not seem quite fair to extend the advantages of a business expense tax deduction or the benefits of rent stabilization or rent control to a corporation to the detriment of the rest of the taxpayers. Not only does it impose an increased tax burden on all of them, but it may also limit the available pool of apartments for the entire community.

*Matter of Sommer v New York City Conciliation & Appeals Bd.* (93 AD2d 481, *affd on opn below* 61 NY2d 973) is not contrary. There, the Conciliation and Appeals Board determined the issue of primary residence pursuant to Emergency Tenant Protection Act § 5 (a) (11) prior to its amendment by chapter 403. The Court of Appeals, in affirming on the opinion of Justice Bloom, simply concluded that this determination of the CAB was not arbitrary or capricious when made. Here, however, the amended determination of the CAB was issued *after* the enactment of chapter 403 and was therefore arbitrary and capricious.