(March 29, 1990)

■ Louis R. Morandi, P. C., Appellant-Respondent, v Charter Management Co., Respondent-Appellant.—Order of the Supreme Court, New York County (Leonard Cohen, J.), entered February 27, 1989, which denied plaintiff's motion seeking summary judgment on the complaint and dismissal of defendant's counterclaims, and which denied defendant's cross motion seeking dismissal of the complaint, summary judgment in its favor on the first, second and third counterclaims and a hearing on the issue of damages on the third counterclaim, unanimously modified, on the law, to the extent of granting plaintiff summary judgment on the complaint and dismissing defendant's counterclaims and, except as so modified, affirmed, with costs.

The facts are not in dispute. By way of a lease dated May 15, 1983, defendant landlord entered into a 10-year commercial lease with GCE International, Inc. and GCE, Inc. (collectively GCE) for the seventh floor of the subject premises, located at 6 West 48th Street in the Borough of Manhattan in the City of New York. Paragraph 52 (B) of the lease states: "Provided Tenant is not in default under the terms of this lease beyond the expiration of any applicable grace period, Landlord shall reduce Tenant's security deposit after the fifth year of the term to $15,000."

On January 19, 1987, GCE executed an assignment of the lease to plaintiff, paragraph (f) of which provides that "[n]othing in this Assignment Agreement shall be deemed to constitute a modification or amendment to the Lease". Simultaneously, defendant landlord, GCE and plaintiff executed a "consent to assignment", containing a similar provision that nothing therein will "be construed to modify, waive or affect" the terms of the lease with the exception that the original provision for a security deposit of $30,000 was replaced with a requirement for a $50,000 security deposit. Pursuant to paragraph (k) of the assignment agreement, "the security deposit and all interest accrued thereon shall be paid upon termination of the lease in the following manner: 40% to Tenant[—] 60% to Assignee".

By way of a letter dated May 20, 1988, plaintiff, as assignee, demanded the return of that portion of the security deposit in excess of $15,000, viz., $35,000 plus accrued interest. Upon defendant's failure to comply with plaintiff's request, this action ensued. On its motion for summary judgment, plaintiff relied on the language of paragraph 52 (B) of the lease,

contending that it mandates a refund of all but $15,000 at the end of the fifth year. Defendant, however, relies on the language of paragraph (k) of the assignment agreement, arguing that the security deposit is payable only upon "termination" of the lease. In ruling on the respective motions, Supreme Court concluded, "The language in the Assignment Agreement when read in conjunction with the Lease is ambiguous regarding the return of the security deposit" and denied the applications.

We disagree. It is clear that defendant, in the consent to assignment, explicitly reaffirmed all of the terms and conditions of the original lease, including the provision for the reduction of the security deposit at the end of the fifth year. The language of paragraph (k) of the assignment agreement is not inconsistent with the terms of paragraph 52 (B) of the lease and applies with equal force and effect to a modified security deposit. Moreover, defendant was not a party to the assistant agreement and, therefore, it cannot be construed to affect defendant's obligations under the lease. As we have stated, "Lease interpretation is subject to the same rules of construction as are applicable to other agreements. * * * The parties' intention should be determined from the language employed, and where the language is clear and unambiguous, interpretation is a matter of law to be determined solely by the court. * * * In such circumstances resort cannot be had to extrinsic evidence to contradict the express terms of the writing" *(Matter of Cale Dev. Co. v Conciliation & Appeals Bd.,* 94 AD2d 229, 234, *affd* 61 NY2d 976).

Defendant's pleadings in connection with its claim of unilateral mistake do not assert the essential elements of fraud and do not allege that defendant was fraudulently induced to enter into the agreement by reason of plaintiff's concealment of a "loophole" in the agreement *(Barclay Arms v Barclay Arms Assocs.,* 74 NY2d 644). Unilateral mistake, unless accompanied by legally sufficient allegations that it was induced by fraud, does not constitute a cause of action for reformation *(Backer Mgt. Corp. v Acme Quilting Co.,* 46 NY2d 211, 219).

The memorandum decision filed herein on February 20, 1990 is recalled and vacated. Concur—Ross, J. P., Milonas, Wallach and Rubin, JJ.