OPINION OF THE COURT
Richard L. Price, J.
Petitioner Schwartz Landes Associates (the owner-landlord of the subject building) moves pursuant to CPLR article 78 to have a determination of the respondent Conciliation and Appeals Board (CAB) vacated or, in the alternative, modified. For the reasons that follow, the petition is granted and the determination is vacated.
BACKGROUND[1]
Petitioner is a partnership that is the fee owner of a building located at 424 West 47th Street, New York, New York. From about August 15, 1968 until the present, the petitioner (or those before it) leased the majority of the apartments in the subject building to one “Fountain House, Inc.” (Fountain House), a nonprofit psychiatric rehabilitation center. Fountain House, the corporation, is located at 425 West 47th Street.
The subject leases carries the following provisions (in addition to routine pro forma provisions):
“[the apartment will be used] as a strictly private dwelling apartment by Tenant and Tenant’s immediate family”
“Anything to the contrary notwithstanding, the demised premises shall be occupied by such persons as Tenant from *1068 time to time may designate. Such occupancy is not to be deemed tenants of the landlord’s and is limited to persons associated with Fountain House”.
As part of a general psychiatric rehabilitation program, Fountain House uses the apartments to house “recently released” (and some not technically yet released) psychiatric patients who may temporarily need housing during their period of rehabilitation. In short, Fountain House serves as a “half-way house” for psychiatric patients.
In January of 1981, the leases between petitioner and Fountain House expired. In February of 1981, petitioner initially offered renewal leases (tied in with requests for increased rent and security), but subsequently revoked the offer and filed an application with the respondent CAB for permission to refuse to offer renewal leases.[2] The basis for this request was petitioner’s contention that Fountain House, a corporation, “does not use [the] apartment as its primary place of business or residence”.
Petitioner’s application, dated June 24, 1981, was denied, without a hearing, in an opinion of the respondent dated April 21, 1983.
Petitioner now moves this court to vacate that denial of its application.
THE LAW
While it is quite true that an administrative agency is accorded wide latitude and broad discretion in the contemplation of matters before it, and the existence of a rational basis for its opinion will usually provide ample protection from judicial interference, a court will be compelled to so interfere if the opinion is not consistent with settled law. (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451.)
Here, the material facts are for the most part conceded. The only issue is whether the corporate (albeit nonprofit) tenant Fountain House is entitled to the protection of the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) vis-a-vis the right to a *1069 renewal lease. This issue, clearly one of statutory and case interpretation, is a matter of law and is, therefore, properly before this court.
The pertinent facts as they relate to this legal issue are simply that the named tenant is a (nonprofit) corporation whose “primary residence” is elsewhere, who supplies the subject apartments to unnamed individuals who occupy them on a transient, albeit, temporarily exclusive basis. In other words, the subject occupants admittedly primarily reside in the apartments during the length of their occupancy, but any number of occupants may reside in one apartment during the lease term — in a continuous pattern.
The issue then is whether this unusual form of tenancy is subject to the prohibitions of the primary residence statute. This court reluctantly holds that in light of recent appellate decisions, it is.
In Matter of Cale Dev. Co. v Conciliation & Appeals Bd. (94 AD2d 229, affd 61 NY2d 976), the court held that a corporate tenant was not entitled a lease renewal where the actual occupant was someone other than the lease-named occupants (the tenant’s president and his wife). In so holding, the court went on to state (pp 234-235): “While * * * a corporate tenant is entitled to a renewal lease provided it can meet the primary residence test, rent stabilization was never intended to place such a tenant’s leasehold estate in perpetual trust for the benefit of whomever, at a particular point in time, might happen to occupy a corporate office.”
So, here, the Rent Stabilization Law was not intended to put these apartments in “perpetual trust” for whoever Fountain House might “designate”. While the “designation” provision allowed the tenant to use these apartments in this manner during the term of any lease, that basically contractual right does not give rise to an exemption from what is known as the “primary residence decontrol act”.
Matter of Walter & Samuels v New York City Conciliation & Appeals Bd. (81 AD2d 212, app dsmd 55 NY2d 824) hits even closer to home. In that case, the First Department held that Syria’s Permanent Mission to the United Nations, as a corporate tenant, was not entitled to a lease *1070 renewal where the subject apartment was occupied by whoever happened to be the Syrian Ambassador at a given time. Similarly, in this case, the apartments are occupied by whatever ex-patients might need a place to live at a given time. (See, also, Koenig v Jewish Child Care Assn., NYU, Feb. 9, 1984, p 7, col 1 [where the Appellate Term, First Department, held that an apartment occupied as a “group home” on a transient basis was not entitled to a renewal lease].)
Respondent errs when it stresses as dispositive the fact that the apartments, when occupied, are occupied as the primary residence of the occupant. This fact is not enough. The occupant in Cale (supra) maintained the subject premises as his primary residence.
The fact that the tenant performs valuable, commendable public services is disputed by no party to this litigation. But, as is stated by the court in Koenig (supra, p 7, col 1) “it is doubtful whether the Rent Stabilization Law was designed to afford rental protection to organizations of this type”.
Furthermore, this court must agree with the petitioner’s point that it should not be forced, in effect, to make an involuntary contribution to even an exemplary charitable organization. A landlord who is compelled to offer successive renewal leases on a block of apartments that are occupied by a series of tenants who may come and go before any given lease term ends, and who thereby is never entitled to a vacancy increase no matter how many times an apartment may “turn over” is, from a market viewpoint, “subsidizing” those tenants. While “subsidization” in and of itself is not objectionable when in accordance with applicable rent statutes, it is unacceptable and even unlawful when it is not.
What makes this decision particularly painful and difficult is that this court knows that without organizations such as Fountain House, these individuals would very likely end up on the street of this city as just a few more of an already great number of homeless people. This court is also aware that though the judicial branch has taken a first step by recognizing at least a possibility of a right of *1071 these people to adequate (interim) housing,[3] neither the executive nor the legislative branch has taken the much needed steps toward proper allocation of this city’s resources. City and State officials must establish some system whereby psychiatric patients are not forced to resort to attempting an unintended interpretation of other, quite unrelated State laws in order to find a way to continue living in this city as human beings.
In conclusion, we must not lose sight of the fact that the primary residence decontrol statute was enacted itself for commendable reasons. The purpose of the law was, and is, to alleviate the housing shortage in this city. The law has made great strides to protect the interests of all present and prospective tenants and the general effect of the primary residence statute has been overwhelmingly positive.
So stated, the petition to vacate is granted, and the respondent CAB is directed to issue its order granting permission to the petitioner not to offer to the tenant a renewal lease.

. The facts provided in the decision are taken from the findings of fact of the respondent, contained in its opinion that is the subject of this litigation.

. Fountain House maintained before the respondent that the offered leases were accepted and therefore there is no basis for the dispute. The respondent in its opinion did not, however, address or decide this issue but instead decided the matter on the primary residence question.

. Klostermann v Cuomo, NYLJ, April 5, 1984, p 7, col 3.