OPINION OF THE COURT
Harold Tompkins, J.
Petitioner moves for summary judgment for a final judgment of possession of the subject premises (80 Madison Ave., apt. PHB) on the grounds that the premises is not the primary residence of respondent corporation and individual. Respondent does not cross-move for summary judgment but requests that relief.
The parties entered into an agreement on November 19,1982 for a lease term to commence November 22, 1982 and end on November 30, 1984. There is no renewal clause. The tenant on the lease was “Laurence S. Freundlich, Inc., and Laurence Freundlich Publishing, Inc. for the sole use of Laurence S. Freundlich” (emphasis added). The apartment utilized by respondents is subject to the Rent Stabilization Law of 1969 as amended (Administrative Code of City of New York § YY51-1.0 et seq.). Consequently, in view of certain provisions of the Omnibus Housing Act of 1983 petitioner served on respondents on October 12, 1984 a “Notice to Tenant on Non-Renewal of Lease,1 Termination of Tenancy and Intention to Recover Possession.” Respondents failed to vacate the apartment. Thus, the *338 issue presented in this holdover proceeding is whether an owner is permitted to decline a renewal lease where the occupancy of a rent-stabilized apartment is a corporate commercial tenant and the lease calls for commercial use by an individual.
Petitioner contends that respondent is not entitled to a lease renewal under the Omnibus Housing Act of 1983 since respondent does not utilize the apartment as his primary residence. Although respondent readily admits that the premises is not his primary residence, he maintains that petitioner was clearly cognizant that the apartment was used for business purposes and that the intent of the parties at the time the agreement was entered into was that the corporate entities would be rent-stabilized tenants. In support of his argument, he claims that petitioner waived any requirement that respondent and his immediate family reside in the apartment by deleting paragraph 33 of the lease which stated that the apartment was to be used for “strictly residential purposes” and “not be used for business or professional services”. Respondent argues that the deletion of that clause creates a triable issue of fact as to the intention of the parties at the time they entered into the agreement.
The Omnibus Housing Act of 1983 (L 1983, ch 403) specifically exempted housing accommodations not occupied by the tenant as a primary residence from coverage of rent stabilization and provided that a court of competent jurisdiction was the appropriate forum to hear a landlord’s claim that he was entitled to recover possession of the premises because the tenant was not occupying it as a primary residence (see, L 1983, ch 403, §§ 41, 55, which amended the Rent Stabilization Law and the Emergency Tenant Protection Act of 1974 [ETPA], L 1974, ch 576, § 4). Primary residence decontrol laws are intended as a matter of public policy to alleviate the shortage of housing units in New York and promote the availability of affordable housing. Omnibus Housing Act § 55 amends ETPA § 5 to provide that:
“A declaration of emergency may be made * * * as to all or any class or classes of housing accommodations in a municipality, except * * *
“(11) housing accommodations which are not occupied by the tenant, not including subtenants or occupants, as his primary residence, as determined by a court of competent jurisdiction.”
Consequently “[i]t is the status of an apartment that is subject to Rent Stabilization Law, from which a tenant derives the right to continued occupancy.” (Tower 53 Assoc. v Bennett, 127 Misc 2d 666, 668 [Civ Ct, NY County].) In evaluating the primary *339 residence status of a corporate tenant the Appellate Division, First Department, held in Matter of Cale Dev. Co. v Conciliation & Appeals Bd. (94 AD2d 229) that the court must examine the residency of the actual occupants as intended by the lease (see, Fisher v Fountain House, 127 Misc 2d 943 [Sup Ct, NY County]). The court reaffirmed the principle of a corporate tenant’s right to a renewal lease under the Rent Stabilization Law for the use and occupancy of an officer, director or employee of the corporate tenant provided the actual occupant of the apartment used the premises as his or her primary residence. (Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d, at p 232.) While the court acknowledged the fiction that an artificial entity cannot actually occupy the apartment, “[o]nly the individual for whose benefit the fiction is created can occupy the apartment as a dwelling.” (Matter of Cale Dev. Co. v Conciliation & Appeals Bd., 94 AD2d, at p 233.)
Here the lease specifically contemplated the use of the rent-stabilized apartment for commercial purposes. Any reference to the use of the apartment for residential purposes or as a primary residence had been stricken (paras 33 and 60 of the lease). However, the lease does not constitute an agreement that the landlord waived its right to object to the continued use of the apartment on the grounds that it is hot the primary residence of respondent. It is implicit in the Omnibus Housing Act that residential apartments used for commercial purposes and not the primary residence of the tenant do not fall into the purview of the public policy of New York to protect residential tenants. Furthermore, if an apartment lease is nominally residential as to form, as here, but in fact is used by the tenant strictly for commercial purposes, that tenant is not subject to rent-stabilizatian protection (Coronet Props. Co. v Jennie & Co. Film Prods., 121 Misc 2d 873). Thus, because of respondent’s commercial use of the premises and the lease indicating this use and purpose, respondent never acquired rights under the Rent Stabilization Law; no right to continued occupancy or a renewal lease existed upon expiration of its lease (Coronet Props. Co. v Jennie & Co. Film Prods., 121 Misc 2d, at p 874).
Accordingly, petitioner’s motion for summary judgment is granted. The warrant shall be issued forthwith and execution stayed for a period of 30 days. The issue of attorney’s fees is set down for a hearing in Part 49 on June 20, 1985 at 9:30 a.m.