YORK RIVER HOUSE, Plaintiff,

v.

PAKISTAN MISSION TO THE UNITED NATIONS, Defendant.

No. 90 Civ. 2071 (JSM).

United States District Court,
S.D. New York.

April 22, 1993.

Michael A. Richman, New York City, for York River House.

Mumtaz Alvi, New York City, for Pakistan Mission.

## MEMORANDUM ORDER

MARTIN, District Judge:

*Background*

Plaintiff York River House is the landlord of a penthouse apartment (the "Apartment") located in Manhattan. Plaintiff and defendant Permanent Mission of Pakistan to the United Nations [1] have entered into nine separate leases of this apartment covering the twenty-year period from February 1, 1970 to January 31, 1990 continuously (collectively, the "Leases"). Each lease designated defendant as tenant, although the fourth lease (covering February 1, 1976 to January 31,

---

1. Defendant is apparently incorrectly named in this suit, but explicitly recognized that it has not moved to correct its designation. *See* Defendant's Answering Brief, p. 1.

1979) also designated "occupant Khalid Ali" as tenant, and the sixth lease (covering February 1, 1981 to January 31, 1984) also designated "occupant I. Patel" as tenant.

Defendant has used the Apartment to house diplomatic employees; during the period of the Leases, four separate persons (all apparently press attaches) have occupied the Apartment sequentially. The current occupant, Mr. Mansoor Suhail, has resided there with his wife and three children since approximately October 1983.

Plaintiff has declined to renew the most recent lease, and defendant, through Mr. Suhail and his family, has been holding over and remaining in possession of the Apartment without plaintiff's permission, claiming that it is entitled to demand a renewal because the Apartment is a "primary residence" as set forth in the Rent Stabilization Law of the State of New York and the Rent Stabilization Code for Rent Stabilized Apartments in New York City. Plaintiff disputes that the Apartment is a "primary residence". The parties cross-move for summary judgment; there being no genuine issue of material fact in dispute, adjudication by summary judgment is appropriate.

*Discussion*

Rent Stabilization Law

■ The First Department of the Appellate Term of New York, after a six-year development of case law, has recently set forth the standard for determining whether premises leased by a corporate tenant may be considered a "primary residence":

> First, it must be ascertained what individual or individuals are contractually designated by the corporate tenant and landlord to occupy the premises, and if, in fact, those individuals are the occupants. Secondly, assuming the occupants are the intended beneficiaries of the corporate tenancy, it must be determined if they are using the premises as a primary residence. If the premises are being used as the primary residence of the contractually designated parties then a rent stabilized lease renewal must be offered.

*Schwartz Landes Assocs. v. New York City Conciliation and Appeals Bd.,* 117 A.D.2d 74,

502 N.Y.S.2d 151, 153 (1st Dept.1986) (citations omitted); *see Cale Dev. Co. v. CAB,* 94 A.D.2d 229, 463 N.Y.S.2d 814 (1st Dept.1983), *aff'd,* 61 N.Y.2d 976, 475 N.Y.S.2d 278, 463 N.E.2d 619 (1984). It is irrelevant for this analysis that defendant is a foreign government rather than a domestic corporation; the two are to be treated equally under this standard. *Sommer v. CAB,* 99 A.D.2d 991, 473 N.Y.S.2d 440 (1st Dept.1984).

■ Thus, an apartment may serve as a "primary residence" when the lease contemplates that a particular class of persons is to reside there and the residents are members of that class. However, "[t]he identity of the intended beneficiaries of a corporate tenancy must be established by reference to the lease; it is contractually determined." *Schwartz Landes,* 502 N.Y.S.2d at 153. Although the beneficiaries may be an unnamed class of persons, *id.* at 154, there must be *some* description of them in the lease itself, *id.* at 153.

■ Here, the lease sought to be renewed wholly failed to describe any class of persons authorized to occupy the Apartment. While defendant argues that the "course of dealing" of the parties served to notify plaintiff of the use of the Apartment, it is unnecessary address this issue; that such a course of dealing was not memorialized in the lease is dispositive. Thus, plaintiff was and is under no obligation to renew the lease, and Mr. Suhail has been illegally remaining in the apartment.

Propriety of Relief

■ The complaint demands "judgment of possession in favor of the plaintiff" and a direction to the Clerk of the Court "to issue a warrant of eviction to a Federal Marshal, to remove the defendants from the apartment." In light of this request for relief, during oral argument the Court requested that the parties submit legal memoranda addressing the issues raised in *767 Third Ave. Assocs. v. Permanent Mission of the Republic of Zaire to the United Nations,* 988 F.2d 295 (2d Cir.1993).

In *Zaire,* plaintiffs sought to evict defendant, a United Nations mission, from premis-

es defendant had leased and on which it had fallen into arrears. The Second Circuit ruled that the defendant could not be evicted or otherwise removed from the premises under the Vienna Convention on Diplomatic Relations, done Apr. 18, 1961 and entered into by the United States Dec. 13, 1972, 23 U.S.T. 3227 (1972) (the "Vienna Convention") and other treaties providing for the inviolability of the premises of the mission. Slip op. at 1732–1744.[2] This result was justified both as a matter of history and under the theory of "functional necessity" which underlies modern diplomatic immunity. *Id.* at 1737–39.

The issue in the case at bar is whether the inviolability defined by *Zaire* applies equally where a mission is the contractual tenant but uses the premises only as a residence for one of its attaches. Although the Court specifically requested that the parties brief the applicability of *Zaire*, defendant chose to submit a ten-page reargument of the merits of the dispute, which will not be considered, reserving only a final half-page for a cursory and non-illuminating discussion of the issue at hand. Nonetheless, because of the importance of the issue and its diplomatic implications, the Court has undertaken to consider all possible arguments carefully before determining whether the Apartment is entitled to the protection granted by *Zaire*.

Plaintiff points out that Article 1, section (i) of the Vienna Convention defines "mission premises" as "the building or parts of buildings and the land ancillary thereto, irrespective of ownership, used for the purposes of the mission including the residence of the head of the mission." It argues that by specifically including the residence of the head of the mission, this definition indicates that premises used to house other members of the mission are not considered "mission premises" unless they are part of the build-

ing used for the purposes of the mission, *i.e.* the location at which the mission would commonly be considered to be situated. The Court would find this argument persuasive, were it not for another provision of the Vienna Convention which the Court finds dispositive of this issue.

Specifically, Article 30, section (1) of the Vienna Convention provides, "The private residence of a diplomatic agent shall enjoy the same inviolability and protection as the premises of the mission." *See also* Article 37, section (1) (granting same "privileges and immunities" to "members of the family of a diplomatic agent forming part of his household"). Since Mr. Suhail has already been adjudged in this case to be a "diplomatic agent" within the meaning of the Vienna Convention, *York River House v. Pakistan Mission to the United Nations*, 1991 WL 206286, *2 (S.D.N.Y.1991) (Leval, J.) (defendant Mansoor Suhail dismissed on the grounds of diplomatic immunity under art. 31(a) because found to be "the Mission's current diplomatic agent in residence" in the Apartment), and since the Apartment has also been adjudged to be Mr. Suhail's private residence, *id.*, there is no question that Article 30 applies and the Apartment shall be entitled to "the same inviolability and protection" as the premises of a mission under *Zaire*. Therefore, this Court may not award plaintiff immediate possession of the Apartment nor direct the U.S. Marshals to evict the defendant or its agents. *Zaire*, slip op. at 1741.[3]

*Conclusion*

For the foregoing reasons, the complaint is DISMISSED with leave to amend to seek damages rather than an order of eviction.

---

**2.** Article 22 of the Vienna Convention declares in part:

  1. The premises of the mission shall be inviolable. The agents of the receiving State may not enter them, except with the consent of the head of the mission.

**3.** Plaintiff suggests in the alternative that "a judgment of possession could be entered in favor of the plaintiff and a warrant of eviction issued, with execution of the warrant stayed." Plain-

tiff's Letter to the Court dated April 8, 1993 p. 2. Plaintiff reasons that with this relief it would then be able to commence a suit against the occupant since he would no longer be entitled to diplomatic immunity; the warrant would destroy the landlord-tenant relationship and thus the occupant would not be holding "for the purpose of the mission" as required by Article 31(a) of the Vienna Convention. Such a procedure is clearly prohibited by Article 30, section (1).

Defendant's motion to enlarge the scope of post-oral argument briefs is DENIED.

SO ORDERED.